IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| STEPHON SUMPTER-BEY | ) | |
|---|---|---|
| Plaintiff, | ) | No. 3:10-1021 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| SHERIFF SONNY WEATHERFORD et. al. | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff, Stephon Sumpter-Bey, a Tennessee state inmate at the Sumner County Jail ("SCJ"), filed this pro se action under 42 U.S.C. § 1983 ("Section 1983") against the Defendants: Sonny Weatherford, Sumner County Sheriff; Sargent Rachel Searcy; Sonya Troutt, Sumner County Jail Administrator; and Vicky Coletran, Melinda Eppstein, and Julian Jacob, Sumner County correctional officers (or "guards"), in their individual and official capacities. The gravamen of Plaintiff's claims is, in essence: (1) that Defendant female SCJ guards viewed Plaintiff nude while he was showering in violation of his Fourth Amendment right to privacy, and (2) that male inmates are treated differently than female inmates as the female shower area is covered, preventing anyone in the guard tower from viewing the female inmates shower, while the male shower area is uncovered and may be viewed from overhead, violating Plaintiff's right to equal protection under the law.

Before the Court is Defendants' motion for summary judgment (Docket Entry No. 74), contending, in sum: (1) that cross-sex monitoring is constitutionally permissible; and (2) that Plaintiff's equal protection claim lacks merit. Plaintiff did not file a response to Defendant's motion for summary judgment.

1

Also before the Court is Plaintiff's cross-motion for summary judgment (Docket Entry No. 77), contending, in sum: (1) that Plaintiff's right to privacy was violated by allowing female guards to view him naked while showering; (2) that Plaintiff filed a grievance with Troutt and Weatherford, but neither Troutt nor Weatherford responded to Plaintiff's grievance; and (3) that cross-sex monitoring at SCJ serves no legitimate penological interest.

In response to Plaintiff's motion for summary judgment (Docket Entry No. 81), Defendants contend, in essence: (1) that Plaintiff failed to provide evidence that he was viewed in the shower by a female guard; (2) that Plaintiff is not entitled to summary judgment as a matter of law because cross-sex monitoring of showering inmates does not violate Plaintiff's right to privacy as it is done for legitimate penological interest; (3) that Troutt responded to Plaintiff's grievance; and (4) that Plaintiff's motion fails to contain a concise statement of facts in accordance with Local Rule 56.01 and should therefore be denied.

In reply (Docket Entry No. 83), Plaintiff contends: (1) that he was viewed the shower by female guards numerous times; (2) that cross-sex monitoring at SCJ is unreasonable or unnecessary; (3) that inmates retain their right to privacy while showering; (4) that sufficient SCJ staff exists to preclude cross-sex monitoring; and (5) that Defendants' treat male inmates disparately.

For the reasons set forth below, the Court concludes that Plaintiff has failed to establish a genuine issue of material fact nor that the law entitles him to judgment as a matter of law. Accordingly, Plaintiff's cross-motion for summary judgment should be denied and Defendants' motion for summary judgment should be granted.

2

## A. Findings of Fact[1]

From August 5, 2010 to March 2, 2011, Plaintiff was a state inmate at SCJ (Docket Entry No. 76, ¶ 5)[2]. SCJ guards monitor both the male and female inmate shower areas to ensure inmate and officer safety. Id. at ¶¶ 3,8. SCJ lacks sufficient staff to allow only male guards to view male inmates and only female guards to view female inmates. Id. at ¶ 7. SCJ guards are trained to monitor the shower areas in specific circumstances to maintain institutional order and safety of the officers and inmates. Id. at ¶ 4. SCJ guards cross-sex monitor all showering inmates, both males and females, on a limited basis. Id. at ¶ 9-11. The male inmate shower area is uncovered, while the female inmate shower area is covered from overhead. (Docket Entry No. 80, Plaintiff's Response to Defendants' Statement of Facts at ¶ 9). This covering allegedly prevents SCJ guards in the tower from viewing female inmates while they shower. Id. According to Troutt, guards working in the tower are able to view the male shower area. (Docket Entry No. 74, Exhibit A, Troutt Affidavit at ¶ 2).

Female guards monitored Plaintiff from the tower while he showered on five non-consecutive dates[3]. (Docket Entry No. 80 at ¶ 6). Plaintiff filed an administrative grievance with

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Here, Defendants filed a statement of undisputed facts (Docket Entry No. 76), supported by Troutt's sworn affidavit (Docket Entry No. 74, Exhibit 1). Plaintiff's response to Defendants' statement of facts (Docket Entry No. 80) fails to support each disputed fact by a specific citation to the record, as required by Fed. R. Civ. Pro. 56(c) and Local Rule 56.01 (c). Plaintiff's response also "fails to properly support an assertion of fact or fails to properly address [Defendants] assertion[s] of fact". Fed. R. Civ. P. 56(e). Accordingly, Defendants' statement of facts is deemed undisputed for summary judgment purposes. Id. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).
[2] Plaintiff was transferred from SCJ to another facility on or around March 2, 2011. (Docket Entry No. 18). On or about December 15, 2011, Plaintiff was transferred back to SCJ. (Docket Entry No. 84). Plaintiff was released from SCJ on or around January 5, 2012. (Docket Entry No. 86).
[3] Plaintiff's complaint alleges that female guards were assigned to the tower on four non-consecutive dates. (Docket Entry No. 1 at 7). Yet, Plaintiff's response to Defendants' statement of facts (Docket Entry No. 80 at ¶ 6) denotes an additional date on which an officer, presumably female, was assigned to the tower.

Troutt, contending that SCJ's policy of cross-sex monitoring violates his privacy rights, and that the male inmates should be treated equal to the female inmates by having the male shower area covered so that female guards may not view male inmates showering from the guard tower. (Docket Entry No. 1 at 7-9).

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Accord <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not

4

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

5

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]...must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added). It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The first step in evaluating a Section 1983 claim is to "identify the exact contours of the underlying right said to have been violated" and to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998). "[T]his Circuit has joined others in recognizing that a convicted prisoner maintains some [Fourth Amendment] reasonable expectations of privacy while in prison, particularly

8

where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir. 1992) (citations omitted).

> <u>Of course, as important this right may be, it must yield to the needs of prison administration</u>. Thus, courts evaluate prison policies that infringe on the privacy rights under a "rational relationship" that provides that a policy is valid if "reasonably related to legitimate penological interests." Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir.1992) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Factors to consider in applying this standard include, "(1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest [asserted to justify it]; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation." Id. at 917.

Everson v. Mich. Dept. of Corrections, 391 F.3d 737, 757 n.27 (6th Cir. 2004) (emphasis added).

"'Our circuit's law respects an incarcerated prisoner's right to bodily privacy, but has found that assigned positions of female guards that require <u>only infrequent and casual observations, or observation at a distance</u>, and that are reasonably related to prison needs are no[t] so degrading as to warrant court interference.'" Hunter v. Helton, No.1:10-cv-00021, 2010 WL 2405092, at *7 (M.D.Tenn. Jun. 10, 2010) (citations omitted) (emphasis added); see also Ashann-Ra v. Virginia, 112 F.Supp.2d 559, 565 (W.D.Va. 2000) (holding that "a male inmate's constitutional rights are not violated when a female guard is permitted to view his genitals on a limited basis," and citing Timm v. Gunter, 917 F.2d 1093, 1101-02 (8th Cir. 1990)). "On the other hand, the Sixth Circuit has 'recognized that a prison policy forcing prisoners ... to be exposed to regular surveillance by officers of the opposite sex while naked – for example while in the shower or using a toilet in a cell – would provide the basis of a claim on which relief could be granted.'" Id. (citing Mills v. City of Barbourville, 389 F.3d 568, 579 (6th Cir. 2004)); see

9

also Kent v. Johnson, 821 F.2d 1220, 1226 (6th Cir.1987); see generally Cornwell v. Dahlberg, 963 F.2d 912, 917 (6th Cir.1992);

This District has concluded that an inmate states a colorable claim if he alleges that guards of the opposite sex regularly viewed him nude while showering. Hunter, at *7.

> Here, the plaintiff alleges that five (5) or six (6) female correctional officers work at the Marshall County Jail during different shifts. As a result, he claims that <u>each female must work the security control tower at some point during her twelve-hour shift rotation</u>. It is during this time, says the plaintiff, that the female correctional officers have the opportunity to observe any male inmates who are showering. In other words, the plaintiff alleges that <u>it is standard policy</u> at the Marshall County Jail <u>for inmates to be exposed by regular surveillance to officers of the opposite sex while naked</u>. As such, the Court finds that the plaintiff has stated a colorable claim.

Id. (emphasis added). Yet, this action is at the summary judgment stage.

In his response to Defendants' statement of undisputed facts (Docket Entry No. 80 at ¶ 6), Plaintiff alleges that female guards are "working the tower on a regular basis," and alleges that female guards viewed him from the tower on five non-consecutive dates during a nearly seven month period. Id. at ¶¶ 2,6; (Docket Entry No. 1 at 7). Plaintiff asserts that female guards violated his right to privacy by "being able to view male inmates while taking a shower." (Docket Entry No. 1 at 6). Yet, as discussed infra, the regularity and distance of the viewing are the relevant factors. Hickman v. Jackson, No. 2:03CV363, 2005 WL 1862425, at *8 (E.D.Va. Aug. 3, 2005).

> Several cases further expounded upon instances which constitute minimal intrusions. In Johnson v. Pa. Bureau of Corrections, 661 F.Supp. 425, 435 (D.Pa., 1987), a male inmate claimed a violation of his right to privacy when female guards viewed him unclothed while showering. Id. at 425. Ultimately, the court determined the intrusions in Johnson did not rise to the level of a privacy violation: "[W]hile plaintiffs' evidence does indicate the possibility of routine observations, <u>it is the number of actual viewings which is relevant, not the potential for such observation</u>. Aside from plaintiffs' own allegations, no evidence indicates that female guards <u>regularly</u> view plaintiffs or any other prisoners when such individuals are naked ..." Id. at 435 (internal citations omitted).

10

Id. (emphasis in original and added); see also Corr. Officers Benevolent Assoc. v. Kralik, No. 04 Civ. 2199(PGG), 2011 WL 1236135, at *11(S.D.N.Y. Mar. 30, 2011) (noting "[m]ore recent cases in [the 2nd] Circuit and elsewhere...suggest that occasional, indirect, or brief viewing of naked prisoner by a guard of the opposite sex may be permissible, but that 'regular and close viewing' is prohibited," and [a]s a general rule, courts have found a violation only in those cases in which guards regularly watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities or showering." (footnote omitted).

To support a judgment, Plaintiff must submit evidence that SCJ's female guards regularly and closely viewed him while he showered. Here, Plaintiff fails to provide any evidence, other than his own allegations, that the Defendant guards regularly and closely viewed him as he showered. After a motion for summary judgment is filed, "[p]laintiff cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1389 (6th Cir. 1993); Vine v. County of Ingham, 884 F. Supp. 1153, 1158-60 (W.D. Mich. 1995).

According to Troutt's affidavit, "all guards are trained to only view the male shower area under specific circumstances and in order to maintain Jail safety, order and protection of the inmates and guards." (Docket Entry No. 74, attachment thereto, Exhibit A, Troutt Affidavit at ¶ 2). "Protecting prison security is a purpose central to all other correction goals," thereby serving a legitimate penological interest. Sheets v. Moore, 97 F.3d 164, 168 (6th Cir. 1996). Further, "[t]he Sixth Circuit has recognized a legitimate interest in providing equal employment opportunities to women and a security interest in deploying available staff effectively." Hunter,

11

2010 WL 2405092, at *7 (citing Harris v. Caruso, No. 2:06-cv-198, 2006 WL 2521403, at *8 (W.D.Mich. Aug. 30, 2006)). The Seventh Circuit stated:

> First, [cross-sex monitoring] makes good use of the staff. It is more expensive for a prison to have a group of guards dedicated to shower and toilet monitoring (equivalently, a group that can do every function except this) than to have guards all of whom can serve each role in the prison. If only men can monitor showers, then female guards are less useful to the prison; if female guards can't perform this task, the prison must have more guards on hand to cover for them...[A]n interest in efficient deployment of the staff supports cross-sex monitoring..."[and] opposite sex surveillance of male inmates, performed on the same basis as same-sex surveillance, is constitutionally permissible...."
>
> * * *
>
> Second, cross-sex monitoring reduces the need for prisons to make sex a criterion of employment, and therefore reduces the potential for conflict with Title VII and the equal protection clause.

Johnson v. Phelan, 69 F.3d 144, 147 (7th Cir. 1995) (emphasis in original and citations omitted).

According to Troutt, SCJ "lacks sufficient staff to allow only male guards to monitor the male inmates [and] allow only female guards to monitor female inmates." (Docket Entry No. 74, Exhibit A, Troutt Affidavit at ¶ 5). In his response to Defendants' statement of facts (Docket Entry No. 80 at ¶ 7) Plaintiff states that "[t]he way the jail is made, one guard can monitor [various] pod[s] from the tower." Yet, Plaintiff does not offer any evidence, other than his own allegations, that SCJ has sufficient staff to preclude the need for cross-sex monitoring. Thus, Plaintiff fails to offer any evidence that cross-sex monitoring at SCJ does not serve legitimate penological security, staffing, and equal employment opportunity interests.

Therefore, the Court concludes that Plaintiff's privacy claim should be dismissed.

Finally, "[t]o prevail on his Equal Protection claim, Plaintiff must prove that the decision-makers in his case acted with a discriminatory purpose." King v. Haslam, No. 3:08-cv-1046, 2011 WL 2516690, at *7 (M.D.Tenn. Jun. 23, 2011) (citing McCleskey v. Kemp, 481 U.S. 279, 292 (1987)). For such a claim to succeed, some factual basis must be set forth in the pleadings beyond conclusory allegations:

> Plaintiffs who fail to allege any specific facts to support a claim of unconstitutional motive cannot expect to involve Government actors in protracted discovery and trial. On receipt of such a complaint, Government defendants might move for dismissal or, alternatively, for summary judgment. Then plaintiffs must produce some factual support for their claim to avert dismissal.

Id. at *8 (quoting Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)) (citation omitted). SCJ guards of both genders monitor female inmates while they are showering. (Docket Entry No. 76 at ¶¶ 9-11).

Plaintiff asserts that male guards cannot view female inmates as they shower because the female shower area is covered. (Docket Entry No. 1 at 6,9); (Docket Entry No. 80 at ¶ 9-11). Yet, according to Troutt's affidavit, "[a] male guard may monitor a female inmate in the shower, just as a female guard may monitor a male inmate in the shower." (Docket Entry No. 74, Exhibit A, Troutt Affidavit at ¶ 7). Plaintiff has not submitted any evidence, beyond his allegations, that male guards cannot view female inmates as they shower. Finally, Plaintiff has not submitted any evidence that Defendants' failure to cover the male inmate shower area was motivated by a discriminatory purpose. Absent such specific facts, the Court concludes that Plaintiff's Equal Protection claim should also be dismissed.

For the reasons set forth above, the Defendants' motion for summary judgment should be granted, and the Plaintiff's motion for summary judgment should be denied.

An appropriate Order is filed herewith.

ENTERED this the 30 day of ~~February~~ March, 2012.

William J. Haynes, Jr.
United States District Judge

13